UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY JOHNSON,<br><br>              Plaintiff,<br><br>      vs.<br><br>HICKS, et al.,<br><br>              Defendants. | 1:11-cv-02162-GSA-PC<br><br>ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND<br>(Doc. 12.)<br><br>THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT NOT EXCEEDING 25 PAGES |

## I. BACKGROUND

Timothy Johnson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on December 30, 2011. (Doc. 1.) On January 18, 2012, Plaintiff consented to Magistrate Judge jurisdiction pursuant 28 U.S.C. § 636(c), and no other parties have made an appearance. (Doc. 7.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

The court screened the Complaint pursuant to 28 U.S.C. § 1915A and issued an order on May 7, 2013, dismissing the Complaint for failure to state a claim, with leave to amend. (Doc. 9.) On July 11, 2013, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (Doc. 12.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently in the custody of the California Department of Corrections and Rehabilitation (CDCR) at the R. J. Donovan Correctional Facility in San Diego, California. The events at issue in the First Amended Complaint allegedly occurred at Kern Valley State Prison (KVSP) in Delano, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Sergeant (Sgt.) Hicks, Sgt. Serrano, Correctional Officer (C/O) Rodriguez #1, C/O Rodriguez #2, C/O Perez, C/O Palombo, and C/O Faraiz. All of the defendants were employed by the CDCR at KVSP at the time of the events at issue. Plaintiff's factual allegations follow.

On March 14, 2011, Plaintiff was placed in administrative segregation (Ad-Seg) because of concerns for his safety. The next day, Captain S. Henderson and Associate Warden

L. L. Wood (not defendants) ordered Plaintiff released to Facility C when housing was available, since the threat to Plaintiff's safety resided on Facility D.  On March 22, 2011, contrary to the order, the Committee (ICC) ordered Plaintiff released to Facility D with double-cell status.  C/O Rodriguez #1 and C/O Rodriguez #2 escorted Plaintiff to a holding cell, informing him that he would have a cell mate.  Plaintiff interviewed the cell mate, inmate Lambert, and learned that Lambert was confined in Ad-Seg on a battery charge pending his transfer to the Security Housing Unit.  Plaintiff refused Lambert as a cell mate, explaining to the officers that Lambert was in Ad-Seg for disciplinary reasons and was well known for in-cell violence upon cell mates.  C/O Rodriguez #1 and C/O Rodriguez #1 threatened to take Plaintiff's personal property if he did not accept housing with Lambert.  Plaintiff believed his safety was in danger, found that he couldn't reason with the officers, and then flatly refused to be housed with Lambert.

C/O Rodriguez #1 and C/O Rodriguez #2 left Plaintiff in a holding cage and later returned with Sgt. Hicks.  Plaintiff explained his fears to Sgt. Hicks, who also threatened to take Plaintiff's property if he refused to accept Lambert as a cell mate, and Plaintiff again refused to be housed with Lambert.  Sgt. Hicks told Plaintiff that he and the other officers did not give a f--- about Plaintiff's safety concerns and aggressively told him, "You are moving." (Amd Cmp at 18 ¶20.)  Later, C/O Rodriguez #1 and C/O Rodriguez #2 escorted Plaintiff back to his cell, from which all of Plaintiff's property had been removed.  There was nothing in the cell, no mattress, bedding, extra clothing, toiletries, or even toilet paper.  Plaintiff had no access to books or periodicals and his contact information was taken, preventing him from corresponding with anyone.

Later the same day, Plaintiff was again removed from his cell and told by Sgt. Serrano, who was accompanied by C/O Perez and C/O Palombo, that he would be moving to a cell with inmate Lambert.  Plaintiff alerted them about his safety concerns, which were ignored.

During the next two weeks, while housed with inmate Lambert, Plaintiff spoke to every CDCR employee within earshot about Lambert's abusive behavior and Plaintiff's fears, explaining that Lambert had threatened to kill Plaintiff if he came off his bunk.  Plaintiff

3

informed C/O Faraiz about the risk to Plaintiff's safety and requested to be moved, but Faraiz refused to act. On April 12, 2011, Plaintiff begged Sgt. Hicks, C/O Rodriguez #1, and C/O Rodriguez #2 to move him to another cell, but they just walked away laughing at Plaintiff.

When the officers were out of sight, Lambert viciously attacked Plaintiff, striking Plaintiff in the head, knocking him to the ground, and biting Plaintiff's hand and fingers, biting off half of his pinky finger and tearing his index finger until it was attached by only a flap of skin. Plaintiff's index finger was surgically re-attached, but Plaintiff lost some feeling and use of his hand. Plaintiff was in the hospital for three days. Upon discharge, with sutures all over his body and staples in his head, Plaintiff was finally housed in the general population on Facility C.

Plaintiff filed an inmate appeal on May 10, 2011, which was first rejected as the wrong form, then erroneously screened out by CCII S. Tallerico (not a defendant) as past the authorized time limits.

On July 9, 2011, after inmate Lambert circulated messages to Facility C that Plaintiff had "ratted" on him and intended to testify against him, Plaintiff was again placed in Ad-Seg for his safety. (Amd Cmp at 20 ¶30.) In January 2012, Plaintiff was transferred, with a reduced Level IV general population designation. Plaintiff alleges that the restrictive housing did not serve any penological interest.

Plaintiff requests monetary damages and declaratory and injunctive relief

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the

deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44.

### A. **Official Capacity**

Plaintiff brings this action against defendants in their official and individual capacities. Plaintiff may not bring suit against Defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

///

1   Accordingly, Plaintiff fails state a claim for damages against any of the defendants in
2   their official capacities.

### B.     Failure to Protect - Eighth Amendment Claim

Plaintiff alleges that defendants deprived him of a basic human need – safety -- when they failed to protect him.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" Id. at 843 (*citing* Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial

evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff fails to state a claim against any of the defendants for failure to protect him. While Plaintiff alleges that inmate Lambert was in Ad-Seg for disciplinary reasons and was well known for in-cell violence, Plaintiff has not shown that Lambert posed a particular, present danger to Plaintiff. Inmates of opposite gangs placed in a cell with each other, without more, fails to satisfy the Eighth Amendment's standard that a prison official must be aware of a specific risk to an inmate. Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1161 (9th Cir. 2013). While Plaintiff alleges he spoke to "every CDCR employee within earshot, . . . explaining that Lambert had threatened to kill Plaintiff if he came off his bunk," Plaintiff fails to name a defendant who knew of a specific threat to Plaintiff. (First Amd Cmp at 19 ¶24.) It is not enough to allege that he "informed Correctional Officer Faraiz . . . about the risk to Plaintiff's safety as it related to being housed with Inmate Lambert." (First Amd Cmp at 20 ¶28.) To state an Eighth Amendment claim, Plaintiff must allege facts demonstrating that a named defendant knew of an excessive risk of harm to Plaintiff's health or safety and acted, or failed to act, while consciously disregarding the risk, causing Plaintiff injury. Plaintiff has not done so. However, Plaintiff may be able to state a claim for failure to protect, and he shall be granted leave to amend this claim.

### C. Conditions of Confinement – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan, 465 F.3d at 1045. Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature,

and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

The denial of adequate clothing may, under certain circumstances, rise to the level of an Eighth Amendment violation. Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994). The Eighth Amendment guarantees sanitation, Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), including personal hygiene supplies such as soap and toothpaste. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). However, the Constitution only requires a prison to provide a prisoner with "adequate" hygiene, Hoptowit, 682 F.2d at 1246, and "'[t]he circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred,'" Hearns, 413 F.3d at 1042 (quoting Johnson, 217 F.3d at 731).

Plaintiff alleges that he was placed in an empty cell, without bedding, linens, a mattress, toiletries, extra clothing, or even toilet paper. Plaintiff also alleges that he had no access to books or periodicals and his contact information was taken, preventing him from corresponding with anyone. Plaintiff has not described conditions that are grave enough to rise to the level of an Eighth Amendment violation. Plaintiff has not indicated how long he spent under these conditions, nor has he shown that he suffered extreme discomfort, humiliation, or injuries as a result of the conditions. Further, Plaintiff has not alleged facts showing that any of the defendants knew of, and consciously disregarded, a substantial risk of serious harm when placing him in an empty cell. Therefore, Plaintiff fails to state a claim based on adverse conditions of confinement under the Eighth Amendment.

### D. Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of an interest for which the protection is sought.

### 1. **Loss of Personal Property**

Plaintiff alleges that he was escorted to his cell by defendants and found that all of his property had been removed from the cell. Plaintiff also alleges that his property was intentionally lost.

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 810-895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff alleges that defendants improperly confiscated his property and intentionally lost it, because he refused to be housed with a cell mate, which indicates that the deprivation of property was intentional and unauthorized. Thus, Plaintiff's remedy would be found under

California law.  Plaintiff fails to show compliance with the California Tort Claims Act, and therefore his property claim is not cognizable under federal or state law.

### 2. Double-cell Housing

To the extent that Plaintiff seeks to proceed on a due process claim because he was placed on double-cell housing status, or because defendants failed to properly apply CDCR regulations when double-celling him, Plaintiff fails to state a claim.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Wilkinson v. Austin, 545 U.S. 209, 221(citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).  In this instance, there is no support for a finding that Plaintiff has a protected liberty interest in avoiding double-cell housing.  Myron, 476 F.3d at 718; May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).  That double-cell housing sometimes results in violent encounters between inmates is not sufficient, in and of itself, to demonstrate that it is a condition which imposes atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life.  See id.  Therefore, Plaintiff fails to state a claim for violation of due process based on being assigned double-cell status.

### E. Equal Protection

Plaintiff alleges that his rights to equal protection were violated when he was singled out to be housed specifically with inmate Lambert, because the regulations regarding inmate safety, security, treatment, and rehabilitative needs, which are followed when most inmates are being housed, were not followed "for some reason" when Plaintiff was housed.  (Amd Cmp at 36 ¶84.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249

(1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for violation of his rights to equal protection.

**F.     Retaliation**

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 84 F.3d 1262, 1269 (9th Cir. 2009) First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 84 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).

>Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
>Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

Plaintiff alleges that defendants threatened him with loss of his property and other retaliatory sanctions because Plaintiff refused to be celled with a violent inmate. However, Plaintiff has not established that his refusal to be celled with a violent inmate is protected conduct under the First Amendment. Therefore, Plaintiff fails to state a claim for retaliation.

### G. Religious Rights – RLUIPA and First Amendment

#### 1. RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

>No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
>(1) is in furtherance of a compelling government interest; and
>
>(2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. To state a RLUIPA claim, a plaintiff must allege facts demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first

identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail,513 F.3d 982, 987 (9th Cir. 2008).

Here, Plaintiff alleges that defendants improperly confiscated his personal properly, including religious materials. However, Plaintiff has not alleged any facts suggesting that the deprivation of religious materials substantially burdened his religious exercise. Plaintiff does not indicate how the loss of his books or other materials prevented him from practicing his religion. Thus, Plaintiff fails to state a claim for relief under RLUIPA.

### 2.  **First Amendment Free Exercise Clause**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)).

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85. "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

Here, as in Plaintiff's RLUIPA claim, Plaintiff fails to allege any facts indicating that he was substantially burdened in his religious practice by the loss of religious materials. Therefore, Plaintiff fails to state a claim for violation of his First Amendment rights to exercise his religion.

### H.  Access to Courts

Plaintiff alleges that he was deprived of his right to access the courts when defendants confiscated his legal property.  While prisoners have a constitutional right to meaningful access to the courts, Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 824–25, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions, Lewis, 518 U.S. at 354.  Moreover, the interferences complained of by Plaintiff must have caused him to sustain an actual injury.  Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002) Lewis, 518 U.S. at 351; Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004).  The absence of an injury precludes an access claim, and Plaintiff's complaint is devoid of any facts suggesting any injury occurred.  Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936.  Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### I.  Injunctive and Declaratory Relief

In addition to monetary damages, Plaintiff requests injunctive and declaratory relief. Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).  Based on the nature of the claims at issue in

///

this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendants violated Plaintiff's rights is unnecessary.

## V.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Plaintiff's First Amended Complaint fails to state any claims upon which relief can be granted under § 1983 against any of the defendants. In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with guidance by the Court. Plaintiff has now filed two complaints without alleging facts against any of the defendants which state a claim under § 1983. Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires." The Court finds that justice requires providing Plaintiff with one final opportunity to file an amended complaint that states a claim. The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file a Second Amended Complaint within thirty days.

The amended complaint should be brief, but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Fed. R. Civ. P. 8(a); Iqbal, 129 S.Ct. at 1948-49; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . .

to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). As Plaintiff was advised in the court's prior order, in order to hold an individual defendant liable, Plaintiff must name the individual defendant, describe where that defendant is employed and in what capacity, and explain how that defendant acted under color of state law. Plaintiff should state clearly, in his or her own words, what happened. Plaintiff must describe what each defendant, *by name*, did to violate the particular right described by Plaintiff.

Plaintiff is advised that a short and simple statement of his claim will speed the screening of his case, and will help the litigation proceed in a more efficient manner. Twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims. Plaintiff should carefully review the court's order and only include the claims he believes are cognizable. Accordingly, Plaintiff's Second Amended Complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.

If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's First Amended Complaint, filed on July 11, 2013, is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Second Amended Complaint curing the deficiencies identified by the Court in this order;

4. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:11-cv-02162-GSA-PC;

5. The Second Amended Complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation; and

6. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated: **April 17, 2014**                     **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE